Victor M. Bartholetti (SBN 138480)
**LAW OFFICES OF VICTOR M. BARTHOLETTI**
15260 Ventura Boulevard, SUITE 1400
Sherman Oaks, California 91403
Telephone: 818-817-9535
Fax: 818-817-9533
E-mail: VMB@VBARTH.COM

FILED
CLERK, U.S. DISTRICT COURT

JUL 3 0 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

Attorney for Plaintiff
UNITED STATES OF AMERICA, ex rel. MARK T. KAWA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, ex rel. MARK T. KAWA

Plaintiff,

vs.

MEDNAX, INC., a Florida corporation; MEDNAX SERVICES, INC., a Florida corporation; PEDIATRIX MEDICAL GROUP, INC., a Florida corporation; AMERICAN ANESTHESIOLOGY, INC., a Florida corporation; PEDIATRIX MEDICAL GROUP OF CALIFORNIA, A.P.C., a California professional corporation; PEDIATRIX CARDIOLOGY OF ORANGE COUNTY, P.C., a California professional corporation; PEDIATRIX CARDIOLOGY OF SACRAMENTO, P.C., a California professional corporation; OBSTETRIX MEDICAL GROUP OF CALIFORNIA, A.P.C., a California professional corporation; OBSTETRIX MEDICAL GROUP OF SACRAMENTO, P.C., a California professional corporation; and OBSTETRIX MEDICAL GROUP OF THE CENTRAL COAST, P.C., a California professional corporation, OBSTETRIX MEDICAL GROUP OF ARIZONA, P.C., an Arizona professional corporation; OBSTETRIX MEDICAL GROUP OF PHOENIX, P.C., an Arizona professional corporation; PEDIATRIX MEDICAL GROUP OF COLORADO. P.C.. a

CASE NO. **CV 13-05489-BRO**
**(PLAc)**

**COMPLAINT FOR CIVIL FALSE CLAIMS ACT; JURY DEMAND**

COMPLAINT FILED UNDER SEAL PURSUANT TO 31 U.S.C. §3729 et. seq.

DO NOT PLACE IN PRESS BOX
DO NOT ENTER IN PACER

1  Colorado professional corporation;
   OBSTETRIX MEDICAL GROUP OF
2  COLORADO, P.C., a Colorado
   professional corporation; PEDIATRIX
3  MEDICAL GROUP OF GEORGIA,
   P.C., a Georgia professional corporation;
4  PEDIATRIX MEDICAL GROUP OF
   TENNESSEE, P.C., a Tennessee
5  professional corporation; OBSTETRIX
   MEDICAL GROUP OF ATLANTA,
6  LLC., a Georgia limited liability
   company; NORTHSIDE WOMEN'S
7  SPECIALISTS, INC., a Georgia
   corporation; AMERICAN
8  ANESTHESIOLOGY ASSOCIATES
   OF GEORGIA, LLC a Georgia limited
9  liability company; AMERICAN
   ANESTHESIOLOGY OF VIRGINIA,
10 P.C., a Maryland professional
   corporation; PEDIATRIX OF
11 MARYLAND, P.A., a Maryland
   professional association; PEDIATRIX
12 MEDICAL GROUP OF THE MID-
   ATLANTIC, P.C., a Maryland
13 professional corporation doing business
   as MARYLAND PERINATAL
14 ASSOCIATES; NEONATOLOGY
   ASSOCIATES, P.C., a Maryland
15 professional corporation;
   AMERICAN ANESTHESIOLOGY OF
16 MICHIGAN, P.C., a Michigan
   professional corporation; PEDIATRIX
17 MEDICAL GROUP OF MICHIGAN,
   P.C., a Michigan professional
18 corporation; PEDIATRIX MEDICAL
   GROUP, P.A., a New Jersey professional
19 association; AMERICAN
   ANESTHESIOLOGY ASSOCIATES,
20 P.A., a New Jersey professional
   association; BURLINGTON
21 ANESTHESIA ASSOCIATES, P.A., a
   New Jersey professional association;
22 PEDIATRIX MEDICAL GROUP OF
   NORTH CAROLINA, P.C., a North
23 Carolina professional corporation;
   OBSTETRIX MEDICAL GROUP OF
24 COASTAL CAROLINA, PLLC, a North
   Carolina professional limited liability
25 company; AMERICAN
   ANESTHESIOLOGY OF NORTH
26 CAROLINA, PLLC, a North Carolina
   professional limited liability company;
27 AMERICAN ANESTHESIOLOGY OF
   THE SOUTHEAST, PLLC, a North
28 Carolina professional limited liability

2

1  company; SOUTHEAST
   ANESTHESIOLOGY CONSULTANTS,)
2  PLLC, a North Carolina professional
   limited liability company; PEDIATRIX
3  MEDICAL SERVICES, INC. a Texas
   not-for-profit corporation; AMERICAN
4  ANESTHESIOLOGY OF TEXAS, INC.,)
   a Texas not-for-profit corporation;
5  PEDIATRIX MEDICAL GROUP OF
   WASHINGTON, INC., P.S., a
6  Washington professional corporation;
   PEDIATRIX CARDIOLOGY OF
7  WASHINGTON, P.C., a Washington
   professional corporation; OBSTETRIX
8  MEDICAL GROUP OF
   WASHINGTON, INC., P.S., a
9  Washington professional corporation;
   and DOES 1–10 inclusive,
10
                    Defendants.
11

12

13          Plaintiff United States of America *ex rel.* Mark T. Kawa, brings this action to

14  recover damages and civil penalties for false and fraudulent Medicare and Medicaid

15  billings made or presented by defendants in violation of the False Claims Act.

16                      **JURISDICTION AND VENUE**

17          1.      This action arises under 31 U.S.C. §3729 *et seq.*, known as the "False

18  Claims Act." Jurisdiction over this matter is conferred on this Court by 31 U.S.C.

19  §3730(b) in that the claims for relief in this action are brought in the name of the

20  United States Government. Jurisdiction also is conferred by 28 U.S.C. §1331

21  because this action arises under the laws of the United States.

22          2.      Venue is proper in the Central District of California under 28 U.S.C.

23  §1391(b) in that the defendants do business and can be found in this judicial district.

24  The Court has personal jurisdiction over the defendants pursuant to 31 U.S.C.

25  §23732(a).

26          3.      As required by the False Claims Act, 31 U.S.C. §3730(a)(2), the

27  Relator has provided the Attorney General of the United States and the United

28  States Attorney for California with a statement of all material evidence and

1  information related to this Complaint.  This Complaint supports reasonable cause to
2  allege that Defendant Mednax Inc., its wholly-owned subsidiary corporations
3  Pediatrix Medical Group, Inc. ("Pediatrix") and American Anesthesiology, Inc.
4  ("American Anesthesiology") (collectively the "Mednax Subsidiaries"), and
5  numerous Mednax-affiliated professional entities are and have been conspiring
6  together to knowingly and intentionally submit false and fraudulent claims to the
7  Federal Government for reimbursement under its Medicare and Medicaid programs.

8      4.    Relator Mark T. Kawa ("Kawa") is not an original source of the
9  information described in the Complaint within the meaning of 31 U.S.C.
10  §3730(e)(4)(B).]

11  **THE PARTIES**
12  **The Plaintiff/Relator**

13      5.    Relator Kawa is a citizen of the United States who resides in the
14  County of Los Angeles, State of California.  He is licensed to practice law in the
15  State of California and within this judicial district.  He has extensive experience as a
16  health care attorney for more than 25 years. He brings this action on behalf of the
17  plaintiff, the United States government.

18  **Defendant Mednax and Its Subsidiaries**

19      6.    Defendant Mednax, Inc. is a general business corporation incorporated
20  in the State of Florida, with its principal place of business located at 1301 Concord
21  Terrace, Sunrise, Florida, the same address that the vast majority of all Defendants
22  list as their principal place of business.  It does business in the State of California
23  directly and/or through its subsidiaries or alter egos.  Mednax, Inc. is a publicly
24  traded for-profit corporation, listed on the New York Stock Exchange under ticker
25  symbol "MD."  It is not and cannot be licensed to practice medicine in any of the
26  states that are the subject of this action.

27      7.    Defendant Mednax Services, Inc. ("Mednax Services") is a general
28  business corporation incorporated in the State of Florida, with its principal place of

4

1   business located at 1301 Concord Terrace, Sunrise, Florida.  It is licensed to do

2   business in the State of California.  Upon information and belief, it is a subsidiary of

3   the publically traded Mednax, Inc.  Mednax Services is not and cannot be licensed

4   to practice medicine in any of the states that are the subject of this action.

5        8.    Defendant Pediatrix is a general business corporation incorporated in

6   the State of Florida, with its principal place of business located at 1301 Concord

7   Terrace, Sunrise, Florida, and is licensed to do business in the State of California.

8   Pediatrix is a wholly-owned subsidiary of Mednax, Inc.  Pediatrix is divided into

9   two divisions, one that focuses on newborn and pediatric services (referred to as

10  "Pediatrix"), and the other that concentrates on maternal-fetal services (referred to

11  as "Obstetrix Medical Group," or "Obstetrix").  Pediatrix is not and cannot be

12  licensed to practice medicine in any of the states that are the subject of this action.

13       9.    Defendant American Anesthesiology is a general business corporation

14  incorporated in the State of Florida, with its principal place of business located at

15  1301 Concord Terrace, Sunrise, Florida.  American Anesthesiology is a wholly-

16  owned subsidiary of Mednax.  It is not and cannot be licensed to practice medicine

17  in any of the states that are the subject of this action.

18       10.   In addition to Mednax, Inc. and its subsidiaries, Mednax Services,

19  Pediatrix, Obstetrix and American Anesthesiology (collectively referred to as

20  "Mednax" or the "Mednax Defendants"), plaintiff names various Mednax-related

21  professional corporations, associations,  limited liability entities and other entities

22  through which Mednax submits false claims for Medicare and Medicaid

23  reimbursement.  They are identified in paragraphs 11-16, 18-19, 21-22, 24-28, 30-

24  33, 35-36, 38-40, 42-46, 48-49 and 51-53 below.  Not surprisingly, the vast majority

25  of these entities list the same Concord Terrace address in Florida notwithstanding

26  that they employ physicians in states other than Florida.

27                **The California Professional Corporation Defendants**

28       11.   Defendant Pediatrix Medical Group of California, A.P.C. is a

1   professional corporation incorporated in the State of California whose principal
2   address is listed on the California Secretary of State's website as 1301 Concord
3   Terrace, Sunrise, Florida.  Plaintiff is informed and believes that Pediatrix Medical
4   Group of California, A.P.C. employs or contracts with licensed physicians that
5   provide medical services to the professional corporation's patients in this judicial
6   district.

7        12.   Defendant Pediatrix Cardiology Group of Orange County, P.C. is a
8   professional corporation incorporated in the State of California whose principal
9   address is listed on the California Secretary of State's website as 1301 Concord
10  Terrace, Sunrise, Florida.  Plaintiff is informed and believes that Pediatrix
11  Cardiology Group of Orange County, P.C. employs or contracts with licensed
12  physicians that provide professional services to the professional corporation's
13  patients in this judicial district.

14       13.   Defendant Pediatrix Cardiology of Sacramento, P.C. is a professional
15  corporation incorporated in the State of California whose principal address is listed
16  on the California Secretary of State's website as 1301 Concord Terrace, Sunrise,
17  Florida.  Plaintiff is informed and believes that Pediatrix Cardiology of Sacramento,
18  P.C. employs or contracts with licensed physicians that provide professional
19  services to the professional corporation's patients in California.

20       14.   Defendant Obstetrix Medical Group of California, A.P.C. is a
21  professional corporation incorporated in the State of California whose principal
22  address is listed on the California Secretary of State's website as 1301 Concord
23  Terrace, Sunrise, Florida.  Obstetrix Medical Group of California, A.P.C. employs
24  or contracts with licensed physicians that provide professional services to the
25  professional corporation's patients in California.

26       15.   Defendant Obstetrix Medical Group of Sacramento, P.C. is a
27  professional corporation incorporated in the State of California whose principal
28  address is listed on the California Secretary of State's website as 1301 Concord

1   Terrace, Sunrise, Florida. Plaintiff is informed and believes that Obstetrix Medical

2   Group of Sacramento, P.C. employs or contract with licensed physicians that

3   provide professional services to the professional corporation's patients in California.

4         16.    Defendant Obstetrix Medical Group of the Central Coast, P.C. is a

5   professional corporation incorporated in the State of California whose principal

6   address is listed on the California Secretary of State's website as 1301 Concord

7   Terrace, Sunrise, Florida. Plaintiff is informed and believes that Obstetrix Medical

8   Group of the Central Coast, P.C. employs or contracts with licensed physicians that

9   provide professional services to the professional corporation's patients in this

10  judicial district.

11        17.    The California Professional Corporation Defendants identified in

12  Paragraphs 11 through 16 above (collectively the "California Professional

13  Corporations" or "California PCs") are and at all relevant times as alleged herein

14  were Mednax-affiliated or controlled professional entities that the Mednax

15  Defendants utilized as "straw man" holding companies created for the sole purpose

16  of attempting to circumvent California's laws which prohibit general corporations

17  from practicing medicine. The Mednax Defendants co-conspired with the

18  California PCs to allow the Mednax Defendants to practice medicine without being

19  licensed in California.

20        **The Arizona Professional Corporation Defendants**

21        18.    Defendant Obstetrix Medical Group of Arizona, P.C. is a professional

22  corporation incorporated in the State of Arizona whose principal address is listed on

23  the Arizona Corporation Commission's website as 1301 Concord Terrace, Sunrise,

24  Florida. Plaintiff is informed and believes that Obstetrix Medical Group of Arizona,

25  P.C. employs or contracts with licensed physicians that provide professional

26  services to the professional corporation's patients in Arizona.

27        19.    Defendant Obstetrix Medical Group of Phoenix, P.C. is a professional

28  corporation incorporated in the State of Arizona whose principal address is listed on

1  the Arizona Corporation Commission's website as 1301 Concord Terrace, Sunrise,
2  Florida. Plaintiff is informed and believes that Obstetrix Medical Group of Phoenix,
3  P.C. employs or contracts with licensed physicians that provide professional
4  services to the professional corporation's patients in Arizona.

5      20.    Plaintiff is informed and believes that the Arizona Professional
6  Corporation Defendants identified in Paragraphs 18 through 19 above (collectively
7  the "Arizona Professional Corporations" or "Arizona PCs") are and at all relevant
8  times as alleged herein were Mednax-affiliated or controlled professional entities
9  that the Mednax Defendants utilized as "straw man" holding companies created for
10  the sole purpose of attempting to circumvent Arizona's laws which prohibit general
11  corporations from practicing medicine. The Mednax Defendants co-conspired with
12  the Arizona PCs to allow the Mednax Defendants to practice medicine without
13  being licensed in Arizona.

14              **The Colorado Professional Corporation Defendants**

15      21.    Defendant Pediatrix Medical Group of Colorado, P.C. is a professional
16  corporation incorporated in the State of Colorado whose principal address is listed
17  on the Colorado Secretary of State's website as 1301 Concord Terrace, Sunrise,
18  Florida. Plaintiff is informed and believes that Pediatrix Medical Group of
19  Colorado, P.C. employs or contracts with licensed physicians that provide
20  professional services to the professional corporation's patients in Colorado.

21      22.    Defendant Obstetrix Medical Group of Colorado, P.C. is a professional
22  corporation incorporated in the State of Colorado whose principal address is listed
23  on the Colorado Secretary of State's website as 1301 Concord Terrace, Sunrise,
24  Florida. Plaintiff is informed and believes that Obstetrix Medical Group of
25  Colorado, P.C. employs or contracts with licensed physicians that provide
26  professional services to the professional corporation's patients in Colorado.

27      23.    Plaintiff is informed and believes that the Colorado Professional
28  Corporation Defendants identified in Paragraphs 21 through 22 above (collectively

1    the "Colorado Professional Corporations" or "Colorado PCs") are and at all relevant

2    times as alleged herein were Mednax-affiliated or controlled professional entities

3    that the Mednax Defendants utilized as "straw man" holding companies created for

4    the sole purpose of attempting to circumvent Colorado's laws which prohibit

5    general corporations from practicing medicine.  The Mednax Defendants co-

6    conspired with the Colorado PCs to allow the Mednax Defendants to practice

7    medicine without being licensed in Colorado.

8                    **The Georgia Professional Entity Defendants**

9         24.    Defendant Pediatrix Medical Group of Georgia, P.C. is a professional

10   corporation incorporated in the State of Georgia whose principal address is listed on

11   the Georgia Secretary of State's website as 1301 Concord Terrace, Sunrise, Florida.

12   Plaintiff is informed and believes that Pediatrix Medical Group of Georgia, P.C.

13   employs or contracts with licensed physicians that provide professional services to

14   the professional corporation's patients in Georgia.

15        25.    Defendant Pediatrix Medical Group of Tennessee, P.C. is a

16   professional corporation licensed to do business in the State of Georgia.  Pediatrix

17   Medical Group of Tennessee, P.C. is incorporated in the State of Tennessee, and its

18   principal address is listed on the Georgia Secretary of State's website as 1301

19   Concord Terrace, Sunrise, Florida.  Plaintiff is informed and believes that Pediatrix

20   Medical Group of Tennessee, P.C. employs or contracts with licensed physicians

21   that provide professional services to the professional corporation's patients in

22   Georgia.

23        26.    Defendant Obstetrix Medical Group of Atlanta, LLC is a Limited

24   Liability Company formed and organized in the State of Georgia whose principal

25   address is listed on the Georgia Secretary of State's website as 1301 Concord

26   Terrace, Sunrise, Florida.  Plaintiff is informed and believes that Obstetrix Medical

27   Group of Atlanta, LLC employs or contracts with licensed physicians that provide

28   professional services to the limited liability company's patients in Georgia.

27. Defendant Northside Women's Specialists, Inc. is a professional corporation incorporated in the State of Georgia whose principal address is listed on the Georgia Secretary of State's website as 1301 Concord Terrace, Sunrise, Florida. Plaintiff is informed and believes that Northside Women's Specialists, Inc. employs or contracts with licensed physicians that provide professional services to the professional corporation's patients in Georgia.

28. Defendant American Anesthesiology Associates of Georgia, LLC is a Limited Liability Company formed and organized in the State of Georgia whose principal address is listed on the Georgia Secretary of State's website as 1301 Concord Terrace, Sunrise, Florida. Plaintiff is informed and believes that American Anesthesiology Associates of Georgia, LLC employs or contracts with licensed physicians that provide professional services to the limited liability company's patients in Georgia.

29. Plaintiff is informed and believes that the Georgia Professional Entity Defendants identified in Paragraphs 24 through 28 above (collectively the "Georgia Professional Entities") are and at all relevant times as alleged herein were Mednax-affiliated or controlled professional entities that the Mednax Defendants utilized as "straw man" holding companies created for the sole purpose of attempting to circumvent Georgia's laws which prohibit general corporations from practicing medicine. The Mednax Defendants co-conspired with the Georgia Professional Entities to allow the Mednax Defendants to practice medicine without being licensed in Georgia.

### The Maryland Professional Corporation Defendants

30. Defendant American Anesthesiology of Virginia, P.C. is a professional corporation incorporated in the State of Maryland whose principal address is listed on the Maryland Department of Assessments & Taxation's website as 1301 Concord Terrace, Sunrise, Florida. Plaintiff is informed and believes that American Anesthesiology of Virginia, P.C. employs or contracts with licensed physicians that

1  provide professional services to the professional corporation's patients in Maryland.

2       31.    Defendant Pediatrix of Maryland, P.A. is a professional corporation

3  incorporated in the State of Maryland whose principal address is listed on the

4  Maryland Department of Assessments & Taxation's website as 11 East Chase

5  Street, Baltimore, Maryland.  Plaintiff is informed and believes that Pediatrix of

6  Maryland, P.A. employs or contracts with licensed physicians that provide

7  professional services to the professional corporation's patients in Maryland.

8       32.    Defendant Pediatrix Medical Group of the Mid-Atlantic, P.C., doing

9  business as Maryland Perinatal Associates, is a professional corporation

10  incorporated in the State of Maryland whose principal address is listed on the

11  Maryland Department of Assessments & Taxation's website as 2810 North Parham

12  Road, Suite 110, Richmond, Virginia.  Plaintiff is informed and believes that

13  Pediatrix Medical Group of the Mid-Atlantic, P.C. employs or contracts with

14  licensed physicians that provide professional services to the professional

15  corporation's patients in Maryland.

16       33.    Defendant Neonatology Associates, P.C. is a professional corporation

17  incorporated in the State of Maryland whose principal address is listed on the

18  Maryland Department of Assessments & Taxation's website as 9901 Medical Center

19  Drive, Rockville, Maryland.  Plaintiff is informed and believes that Neonatology

20  Associates, P.C. employs or contracts with licensed physicians that provide

21  professional services to the professional corporation's patients in Maryland.

22       34.    Plaintiff is informed and believes that the Maryland Professional

23  Corporation Defendants identified in Paragraphs 30 through 33 above (collectively

24  the "Maryland Professional Corporations" or "Maryland PCs") are and at all

25  relevant times as alleged herein were Mednax-affiliated or controlled professional

26  entities that the Mednax Defendants utilized as "straw man" holding companies

27  created for the sole purpose of attempting to circumvent Maryland's laws which

28  prohibit general corporations from practicing medicine.  The Mednax Defendants

1  co-conspired with the Maryland PCs to allow the Mednax Defendants to practice

2  medicine without being licensed in Maryland.

3  **The Michigan Professional Corporation Defendants**

4  35.    Defendant American Anesthesiology of Michigan, P.C. is a

5  professional corporation incorporated in the State of Michigan whose principal

6  address is listed on the Michigan Department of Licensing and Regulatory Affairs

7  website as 30600 Telegraph Road, Suite 2345 Bingham Farm, Michigan. Plaintiff is

8  informed and believes that American Anesthesiology of Michigan, P.C. employs or

9  contracts with licensed physicians that provide professional services to the

10  professional corporation's patients in Michigan.

11  36.    Defendant Pediatrix Medical Group of Michigan, P.C. is a professional

12  corporation incorporated in the State of Michigan whose principal address is listed

13  on the Michigan Department of Licensing and Regulatory Affairs website as 30600

14  Telegraph Road, Suite 2345 Bingham Farm, Michigan. Plaintiff is informed and

15  believes that Pediatrix Medical Group of Michigan, P.C. employs or contracts with

16  licensed physicians that provide professional services to the professional

17  corporation's patients in Michigan.

18  37.    Plaintiff is informed and believes that the Michigan Professional

19  Corporation Defendants identified in Paragraphs 35 through 36 above (collectively

20  the "Michigan Professional Corporations" or "Michigan PCs") are and at all

21  relevant times as alleged herein were Mednax-affiliated or controlled professional

22  entities that the Mednax Defendants utilized as "straw man" holding companies

23  created for the sole purpose of attempting to circumvent Michigan's laws which

24  prohibit general corporations from practicing medicine. The Mednax Defendants

25  co-conspired with the Michigan PCs to allow the Mednax Defendants to practice

26  medicine without being licensed in Michigan.

27  **The New Jersey Professional Association Defendants**

28  38.    Defendant Pediatrix Medical Group, P.A. is a professional association

12

1 incorporated in the State of New Jersey (Entity ID 0100530866) whose precise
2 principal place of business is unknown to Plaintiff, but is believed to be in Trenton,
3 New Jersey. Plaintiff is informed and believes that Pediatrix Medical Group, P.A.
4 employs or contracts with licensed physicians that provide professional services to
5 the professional association's patients in New Jersey.

6     39.     Defendant American Anesthesiology Associates, P.A. is a professional
7 association incorporated in the State of New Jersey (Entity ID 0100667031) whose
8 precise principal place of business is unknown to Plaintiff. Plaintiff is informed and
9 believes that American Anesthesiology Associates, P.A. employs or contracts with
10 licensed physicians that provide professional services to the professional
11 association's patients in New Jersey.

12     40.     Defendant Burlington Anesthesia Associates, P.A. is a professional
13 association incorporated in the State of New Jersey (Entity ID 0100219451) whose
14 precise principal place of business is unknown to Plaintiff, but believed to be in
15 Mount Holly, New Jersey. Plaintiff is informed and believes that Burlington
16 Anesthesia Associates, P.A. employs or contracts with licensed physicians that
17 provide professional services to the professional association's patients in New
18 Jersey.

19     41.     Plaintiff is informed and believes that the New Jersey Professional
20 Association Defendants identified in Paragraphs 38 through 40 above (collectively
21 the "New Jersey Professional Associations" or "New Jersey PAs") are and at all
22 relevant times as alleged herein were Mednax-affiliated or controlled professional
23 entities that the Mednax Defendants utilized as "straw man" holding companies
24 created for the sole purpose of attempting to circumvent New Jersey's laws which
25 prohibit general corporations from practicing medicine. The Mednax Defendants
26 co-conspired with the New Jersey PAs to allow the Mednax Defendants to practice
27 medicine without being licensed in New Jersey.

28     / / /

1

**The North Carolina Professional Entity Defendants**

2      42.     Defendant Pediatrix Medical Group of North Carolina, P.C. is a
3   professional corporation incorporated in the State of North Carolina whose principal
4   address is listed on the North Carolina Secretary of State's website as 1301 Concord
5   Terrace, Sunrise, Florida.  Plaintiff is informed and believes that Pediatrix Medical
6   Group of North Carolina, P.C. employs or contracts with licensed physicians that
7   provide professional services to the professional corporation's patients in North
8   Carolina.

9      43.     Defendant Obstetrix Medical Group of Coastal Carolina, PLLC is a
10   professional limited liability company organized in the State of North Carolina
11   whose principal address is not listed on the North Carolina Secretary of State's
12   website.  Plaintiff is informed and believes that Obstetrix Medical Group of Coastal
13   Carolina, PLLC employs or contracts with licensed physicians that provide
14   professional services to the professional corporation's patients in North Carolina.

15      44.     Defendant American Anesthesiology of North Carolina, PLLC is a
16   professional limited liability company organized in the State of North Carolina
17   whose principal office mailing address is listed on the North Carolina Secretary of
18   State's website as 1301 Concord Terrace, Sunrise, Florida.  Plaintiff is informed and
19   believes that American Anesthesiology of North Carolina, PLLC employs or
20   contracts with licensed physicians that provide professional services to the
21   professional corporation's patients in North Carolina.

22      45.     Defendant American Anesthesiology of the Southeast, PLLC is a
23   professional limited liability company organized in the State of North Carolina
24   whose principal address is not listed on the North Carolina Secretary of State's
25   website.  Plaintiff is informed and believes that American Anesthesiology of the
26   Southeast, PLLC employs or contracts with licensed physicians that provide
27   professional services to the professional corporation's patients in North Carolina.
28      46.     Defendant Southeast Anesthesiology Consultants, PLLC is a

1  professional limited liability company organized in the State of North Carolina
2  whose principal office address is listed on the North Carolina Secretary of State's
3  website as 1301 Concord Terrace, Sunrise, Florida.  Plaintiff is informed and
4  believes that Southeast Anesthesiology Consultants, PLLC employs or contracts
5  with licensed physicians that provide professional services to the professional
6  corporation's patients in North Carolina.

7      47.   Plaintiff is informed and believes that the North Carolina Professional
8  Entity Defendants identified in Paragraphs 42 through 46 above (collectively the
9  "North Carolina Professional Entities" are and at all relevant times as alleged herein
10  were Mednax-affiliated or controlled professional entities that the Mednax
11  Defendants utilized as "straw man" holding companies created for the sole purpose
12  of attempting to circumvent North Carolina's laws which prohibit general
13  corporations from practicing medicine.  The Mednax Defendants co-conspired with
14  the North Carolina Professional Entities to allow the Mednax Defendants to practice
15  medicine without being licensed in North Carolina.

16                    **The Texas Corporate Defendants**

17      48.   Defendant Pediatrix Medical Services, Inc. is a non-profit corporation
18  incorporated in the State of Texas whose principal address is listed on the Texas
19  Secretary of State's website as 1301 Concord Terrace, Sunrise, Florida.  Plaintiff is
20  informed and believes that Pediatrix Medical Services, Inc. employs or contracts
21  with licensed physicians that provide professional services to the professional
22  corporation's patients in Texas.

23      49.   Defendant American Anesthesiology of Texas, Inc. is a non-profit
24  corporation incorporated in the State of Texas whose principal address is listed on
25  the Texas Secretary of State's website as 1301 Concord Terrace, Sunrise, Florida.
26  Plaintiff is informed and believes that American Anesthesiology of Texas, Inc.
27  employs or contracts with licensed physicians that provide professional services to
28  the professional corporation's patients in Texas.

1    50.    Plaintiff is informed and believes that the Texas Corporate Defendants
2    identified in Paragraphs 48 through 49 above (collectively the "Texas Corporate
3    Defendants") are and at all relevant times as alleged herein were Mednax-affiliated
4    or controlled entities that the Mednax Defendants utilized as "straw man" holding
5    companies created for the sole purpose of attempting to circumvent Texas' laws
6    which prohibit general corporations from practicing medicine.  The Mednax
7    Defendants co-conspired with the Texas Corporate Defendants to allow the Mednax
8    Defendants to practice medicine without being licensed in Texas.

9                    **The Washington Professional Corporation Defendants**

10   51.    Defendant Pediatrix Medical Group of Washington, Inc., P.S. is a
11   professional corporation incorporated in the State of Washington whose principal
12   address is not listed on the Washington Secretary of State's website, but whose
13   corporate officer's addresses are listed on the Washington Secretary of State's
14   website as 1301 Concord Terrace, Sunrise, Florida.  Plaintiff is informed and
15   believes that Pediatrix Medical Group of Washington, Inc. P.S. employs or contracts
16   with licensed physicians that provide professional services to the professional
17   corporation's patients in Washington.

18   52.    Defendant Pediatrix Cardiology of Washington, P.C. is a professional
19   corporation incorporated in the State of Washington whose principal address is not
20   listed on the Washington Secretary of State's website, but whose corporate officer's
21   addresses are listed on the Washington Secretary of State's website as 1301 Concord
22   Terrace, Sunrise, Florida.  Plaintiff is informed and believes that Pediatrix
23   Cardiology of Washington, P.C. employs or contracts with licensed physicians that
24   provide professional services to the professional corporation's patients in
25   Washington.

26   53.    Defendant Obstetrix Medical Group of Washington, Inc., P.S. is a
27   professional corporation incorporated in the State of Washington whose principal
28   address is not listed on the Washington Secretary of State's website, but whose

1  corporate officer's addresses are listed on the Washington Secretary of State's

2  website as 1301 Concord Terrace, Sunrise, Florida.  Plaintiff is informed and

3  believes that Obstetrix Medical Group of Washington, Inc., P.S. employs or

4  contracts with licensed physicians that provide professional services to the

5  professional corporation's patients in Washington.

6      54.    Plaintiff is informed and believes that the Washington Professional

7  Corporation Defendants identified in Paragraphs 51 through 53 above (collectively

8  the "Washington Professional Corporations" or "Washington PCs") are and at all

9  relevant times as alleged herein were Mednax-affiliated or controlled professional

10  entities that the Mednax Defendants utilized as "straw man" holding companies

11  created for the sole purpose of attempting to circumvent Washington's laws which

12  prohibit general corporations from practicing medicine.  The Mednax Defendants

13  co-conspired with the Washington PCs to allow the Mednax Defendants to practice

14  medicine without being licensed in Washington.

15      55.    Plaintiff is ignorant of the true names and capacities, whether

16  individual, corporate or otherwise of Defendants DOES 1 through 10, inclusive.

17  Such fictitious defendants are sued pursuant to the provisions of Federal Rule of

18  Civil Procedure Rule 19 and Central District of California Local Rule 19-1.

19  Plaintiff is informed and believes and thereon alleges that each fictitious defendant

20  is a Mednax-affiliated or controlled professional entity that the Mednax Defendants

21  may have utilized as a "straw man" holding company created for the sole purpose of

22  attempting to circumvent the laws in Arizona, California, Colorado, Georgia,

23  Maryland, Michigan, New Jersey, North Carolina, Texas and/or Washington which

24  prohibit general corporations from practicing medicine.  Plaintiff is informed and

25  believes and thereon alleges that the DOE Defendants were in some manner

26  responsible, participated in, or contributed to, the matters and things of which

27  Plaintiff complains herein and in some fashion has legal responsibility therefore.  If

28  the exact nature and identity of such fictitious defendants' responsibility for

1  participation in, and contribution to, the matters herein alleged are ascertained by

2  Plaintiff, Plaintiff will seek to amend this Complaint to set forth the same.

3       56.    Each of the Defendants were and are the agents, co-conspirators,

4  servants, representatives and/or employees of each of the other Defendants herein,

5  and were at all times acting within the course and scope of such agency,

6  representatives and employment and with the permission and consent of each of said

7  Defendants.  Each of said Defendants acted and participated in the acts or conduct

8  alleged herein and at all times mentioned, acting in concert with, and in conspiracy

9  with each and every one of the remaining Defendants.  As a direct consequence of

10  the manner in which Mednax, Inc. has controlled and dominated the Mednax

11  Subsidiaries and the Arizona PCs, California PCs, Colorado PCs, Georgia

12  Professional Entities, Maryland PCs, Michigan PCs, New Jersey PAs, North

13  Carolina Professional Entities, Texas Corporate Defendants and Washington PCs

14  (collectively, the "State Medical Practices") and at the same time attempted to

15  conceal its control and dominion over them, Mednax has acted as the alter ego of the

16  Mednax Subsidiaries and the State Medical Practices resulting in a unity of interest

17  and ownership that the separate personalities of Mednax, the Mednax Subsidiaries

18  and the State Medical Practices no longer exist.  Moreover, failure to disregard the

19  separate nature of the corporate entities would result in fraud or injustice as reflected

20  by the allegations of this Complaint.

21  **MEDNAX'S AND ITS SUBSIDIARIES'**

22  **VIOLATION OF THE CORPORATE PRACTICE OF MEDICINE**

23       57.    Mednax and its subsidiaries over the past several years has been on a

24  steady buying spree, purchasing small and medium medical practice groups in

25  specific geographic areas throughout the United States.

26       58.    However, in Arizona, California, Colorado, Georgia, Maryland,

27  Michigan, New Jersey, North Carolina, Texas and Washington, for-profit general

28  business corporations are prohibited from owning, operating, controlling or

1   employing licensed physicians.  Non-professional corporations that employ or
2   control physicians are deemed to be practicing medicine without a license and are
3   subject to criminal prosecution under what is commonly referred to in the medical
4   industry and hereinafter as the prohibition or ban against the "Corporate Practice of
5   Medicine," or the "CPM Doctrine".

6        59.   In these ten states, the CPM Doctrine prohibits Mednax from directly
7   purchasing, owning, operating or controlling medical practices, or directly or
8   indirectly employing physicians.  But the CPM Doctrine has not deterred Mednax.
9   To circumvent these laws and avoid discovery of its illegal ownership of medical
10  practices and employment of physicians, Mednax operates a fraudulent and
11  deceptive scheme to practice medicine through the State Medical Practices, which in
12  reality are "straw men" co-conspirator entities that purchase, own, and/or operate
13  medical practices and hire employees at Mednax's direction and control.  Each of
14  the State Medical Practices is headed by a state-licensed physician who is
15  compensated and controlled by Mednax.  Plaintiff is informed and believes and
16  thereon alleges that Mednax may have control over other State Medical Practices
17  that Plaintiff has yet to identify.

18       60.   Mednax utilizes these State Medical Practices as the entities to
19  purchase, own and/or operate existing medical practices, often in concentrated
20  geographic regions.  In California, for example, Mednax has used its California PCs
21  to purchase three practices in Sacramento in 2012.  Plaintiff is informed and
22  believes that, by purchasing multiple neonatal and pediatric ICU practices in
23  particular areas, Mednax attempts to corner the market in that specialty.  When it
24  does so, it establishes market share and has greater power to dictate pricing and, if it
25  suits its corporate goals, to limit access to such care in a given region.

26       61.   Plaintiff is informed and believes and thereon alleges that Mednax
27  acquires medical groups through an existing State Medical Practice or the formation
28  of a new one.  The transactions typically are accomplished through a stock purchase,

1   whereby the acquired company becomes part of the existing State Medical Practice

2   and is subject to the pre-existing business practices.  In other instances where the

3   transaction is structured as an asset purchase, the sale is conditioned upon the

4   acquired medical group being bound to an Exclusive Management Agreement with

5   a Mednax Subsidiary, the terms of which are described below.

6        62.   The Exclusive Management Agreement purports to be an agreement

7   whereby a Mednax Subsidiary agrees to manage the State Medical Practice and

8   performs its administrative function in exchange for a fee, but in reality it is an

9   agreement whereby the State Medical Practice gives up ownership and control of its

10   practice and turns over all of its net profits (i.e., gross revenues less expenses) to the

11   Mednax Subsidiary as a "management fee."  Attached hereto as Exhibits "1" and

12   "2," respectively, are true and correct copies of an Exclusive Management

13   Agreement between Pediatrix and Pediatrix Medical Group of Texas, P.A.

14   (hereinafter the "Pediatrix Management Agreement"), and an exemplar Exclusive

15   Management Agreement, which was attached as an exhibit Mednax SEC filing and

16   is  believed to be presently utilized by the Mednax Subsidiaries (hereinafter, the

17   "Exemplar Mednax Management Agreement").  Plaintiff is informed and believes

18   and thereon alleges that these Exclusive Management Agreements, or versions that

19   are virtually identical, are presently used by Mednax and/or its Mednax Subsidiaries

20   to control the State Medical Practices as detailed below.

21        63.   The Exclusive Management Agreement is *not* a management

22   agreement but rather an ownership agreement that establishes dominion and control

23   by Mednax or the Mednax Subsidiaries over its State Medical Practices.  The

24   Exclusive Management Agreement (which requires the State Medical Practice to

25   cede all profits and decision-making authority to Mednax and/or its Mednax

26   Subsidiaries) deviates so far from industry standards that it renders Mednax a *de*

27   *facto* owner of the State Medical Practices.  Reference to the following provisions is

28   illustrative:

1        a.      Article 7 (Term and Termination) of the Pediatrix Management

2   Agreement requires the medical group to employ Pediatrix as its exclusive

3   "management" company in effect *forever* by automatically extending the term of the

4   agreement each year, and requiring a 10-year notice to terminate.  Article 7 (Term

5   and Termination) of the Exemplar Mednax Management Agreement makes the

6   agreement permanent and non-terminable unless Mednax is adjudged to be grossly

7   negligent or fraudulent by a court of competent jurisdiction.

8        b.      Article 2 (Duties of Manager) of the Pediatrix Management

9   Agreement and the Exemplar Mednax Management Agreement cede *all* day-to-day

10  non-medical decision-making authority to the Mednax Subsidiary.  While the

11  respective provisions of those two agreements appear to leave the physicians with

12  the medical decision making authority, the agreements greatly limit the physician-

13  employees' ability to control their practices and to act with independence.

14       c.      Article 4 (Hospital Contracts) of the Pediatrix Management

15  Agreement, and Article 3 (Hospital Contracts) of the Exemplar Mednax

16  Management Agreement, both prohibit the medical practice from contractually

17  agreeing to provide medical services at hospitals and other healthcare entities unless

18  approved in advance by Pediatrix and Mednax (or its Subsidiary), respectively.

19       d.      And, most critically Article 6 (Compensation and Expenses) of

20  both agreements requires the State Medical Practices to turn over *all* or virtually all

21  of their net profits to Mednax.

22       64.     Through Mednax's acquisition and control of the State Medical

23  Practices and the mandatory requirement that the State Medical Practices submit to

24  the Exclusive Management Agreements, Mednax uses its physician-employees to

25  practice medicine in violation of the CPM Doctrine in at least ten states.  By

26  utilizing the State Medical Practices as "sham fronts" to submit false and fraudulent

27  claims to the federal government's Medicare and Medicaid programs, Mednax is

28  submitting false claims through its State Medical Practices in violation of the False

1  Claims Act, which subjects it, its subsidiaries and each State Medical Practice to

2  civil liability.

### COUNT ONE

### CIVIL FALSE CLAIMS ACT

### (AGAINST ALL DEFENDANTS)

6      65.      Relator Kawa repeats and realleges each and every allegation of the

7  foregoing paragraphs 1 through 64, inclusive, of this Complaint and incorporates

8  them by reference herein as if set forth at length.

9      66.      Over the past four years, defendants knowingly, or with reckless

10  disregard of the facts and legal requirements, presented, or caused to be presented,

11  to Medicare, Medicaid and other federal healthcare programs, bills and/or invoices

12  for payment or approval that were false and fraudulent.  The bills and/or invoices

13  were false and fraudulent because the invoices were submitted by Mednax, Mednax

14  Subsidiaries, or its State Medical Practices, but in reality the services were rendered

15  by Mednax, a publicly-traded for-profit general business corporation that is not

16  licensed to practice medicine.

17      67.      By reason of the violation of 31 U.S.C. §3729(a)(1-4), Defendants have

18  knowingly and recklessly damages the United States Government in an

19  undetermined amount.

20      WHEREFORE, Plaintiff United States of America ex rel. Mark T. Kawa,

21  prays as follows:

22      1.      That Judgment be entered in favor of Plaintiff and against each

23  defendant, which awards Plaintiff damages in an amount three times the amount of

24  all sums paid by the United States of America as a result of the defendants'

25  violations of 31 U.S.C. §3729;

26      2.      That Judgment be entered in favor of Plaintiff and against each

27  defendant in an amount equal to the number of false claims that will be proven at

28

1  trial, as provided for 31 U.S.C. §3729(a) and imposition of a civil penalty between

2  $5,500 and $11,000 per claim;

3       3.      That Relator is awarded the maximum percentage of the government's

4  recovery as provided by statute;

5       4.      That Relator be awarded all costs of this action, including attorney's

6  fees and court costs; and

7       5.      That Relator recover such further and additional relief that this Court

8  may deem just or proper.

9  DATED: July 29, 2013                    LAW OFFICES OF VICTOR M.
10                                         BARTHOLETTI

11

12                              By: _____
13                                      Victor M. Bartholetti, Esq.
                                        Attorneys for Plaintiff
14                                      UNITED STATES OF AMERICA ex.
                                        Rel.

## JURY DEMAND

Plaintiff United States of America ex rel. Mark T. Kawa demands a jury trial against defendants.

DATED: July 29, 2013        LAW OFFICES OF VICTOR M. BARTHOLETTI

By: _____
Victor M. Bartholetti, Esq.
Attorneys for Plaintiff
UNITED STATES OF AMERICA ex. Rel.

EXCLUSIVE MANAGEMENT AND ADMINISTRATIVE SERVICES AGREEMENT

THIS EXCLUSIVE MANAGEMENT AND ADMINISTRATIVE SERVICES AGREEMENT (the "Agreement") entered on this 14ᵗʰ day of July, 1995, is by and between PEDIATRIX MEDICAL GROUP, INC., a Florida corporation ("Contractor") and PEDIATRIX MEDICAL GROUP OF TEXAS, P.A., a Texas professional association ("Pediatrix").

WHEREAS, Pediatrix is a professional association which is engaged in the business of providing neonatology and pediatric intensive care services through its physician employees to hospital patients; and

WHEREAS, Contractor is a corporation engaged in the business of providing administrative and management services to medical practices; and

WHEREAS, Pediatrix desires to contract with Contractor for the provision of management and administrative services, and Contractor desires to provide such services to Pediatrix in accordance with the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the premises and other valuable consideration, the sufficiency of which is hereby acknowledged, the parties intending to be legally bound, agree as follows:

1.    Engagement. Pediatrix hereby engages Contractor, and Contractor hereby agrees to be engaged by Pediatrix, to provide the management and administrative services described in this Agreement.

2.    Duties of Contractor. Contractor shall provide all of the management and administrative services required for the day-to-day operation of Pediatrix, including but not limited to the following:

2.1    Billing and Collection. Contractor shall provide billing and collection services for all professional services rendered by Pediatrix. Such services shall include: the correlation of records kept by the physicians who render care; maintenance of insurance information for each patient; computation and submission of regular bills for each patient account; pursuit of any disputed claims, including the filing of lawsuits to obtain payment; and accounting for the collection of all revenues. To facilitate the expeditious collection of all of Pediatrix fees for services provided by its physicians, and to assist Contractor in providing appropriate cash flow management to Pediatrix, Pediatrix hereby assigns to Contractor all of its professional fees and accounts receivable for services provided, excluding fees and accounts receivable relating to professional services rendered to patients eligible for coverage under the Medicare or Medicaid programs or other third party payors which refuse to honor such assignments, and hereby appoints Contractor as its true and lawful attorney-in-fact, with full power to collect and otherwise deal in and with such fees and receivables assigned by Pediatrix; provided, however, that Pediatrix hereby assigns to Contractor all income received by it on

Exhibit 1 - Page 25

account of services rendered to patients of Pediatrix who are eligible for coverage in the Medicare or Medicaid programs and other third party payors which refuse to honor assignments, and Pediatrix agrees to surrender, transfer, and remit to Contractor promptly all fees received on behalf of or from such patients. Pediatrix agrees to execute any and all instruments and documents deemed necessary or desirable by Contractor to carry out the provisions of this section. Contractor agrees that to the extent Pediatrix receives notice from a hospital of, or Pediatrix makes on its own behalf, a bona fide request to write-off or hold in abeyance any of Pediatrix professional fees, that Contractor will not unreasonably refuse the request of the hospital.

2.2   Third Party Payors.  Contractor shall act as the liaison of Pediatrix with all third party payors for the purpose of negotiating managed care, preferred provider, and other agreements with such third party payors.   Contractor shall monitor such agreements for compliance.

2.3   Hospital Liaison.  Contractor shall be the administrative liaison between Pediatrix and any hospitals in which Pediatrix provides professional services.  Contractor shall assist Pediatrix in providing whatever administrative services Pediatrix may be required to perform in accordance with its agreement with each hospital.  Contractor shall also bill and collect such sums which may be due from hospitals.  Contractor shall monitor contractual agreements with hospitals for compliance.

2.4   Personnel Services.  Contractor shall provide the following personnel services:  maintenance of complete personnel records on each employee; establishment and administration of employee benefits, including insurance plans; recruitment and hiring of non-medical personnel; evaluation and salary recommendations for non-medical personnel; provide day-to-day management and direction to non-medical personnel; and development of personnel policies and procedures.   Contractor shall establish payroll accounts and procedures in accordance with Section 2.6.

2.5   Financial Services.  Contractor shall provide the following financial services:  Contractor shall provide such bookkeeping services which may be required to keep the books and accounts of Pediatrix, and may retain a professional accountant to perform same; Contractor shall ensure that all state and federal tax returns are prepared and filed on a timely basis; Contractor shall track and pay all accounts payable from funds made available by Pediatrix. Contractor shall also assist Pediatrix in developing a proposed fee schedule for each service to be provided by Pediatrix; however, this fee schedule is subject to the approval of Pediatrix. Contractor shall review the fee schedule on a periodic basis and recommend updates to Pediatrix as may be necessary. Failure of Pediatrix to follow Contractor's recommendation shall give Contractor the right to terminate this Agreement.

2.6   Cash Management.  Contractor is authorized to open one or more bank accounts necessary to manage the finances of Pediatrix, at banks designated by Pediatrix. Pediatrix shall approve one or more individuals designated by Contractor to have authority to sign checks, make deposits and transact such other business as may be reasonably necessary. Contractor is authorized to establish payroll systems and make payroll payments, pay accounts

2

Exhibit 1 - Page 26

payable, and otherwise satisfy the obligations of Pediatrix from these accounts. Contractor shall deposit all collections from services rendered by Pediatrix into these accounts. Contractor shall prepare and provide Pediatrix monthly reconciliations of all bank accounts. Contractor may utilize one bank account to deposit funds of Pediatrix and other entities with whom Contractor has similar arrangements so long as Contractor is able to account for the funds of Pediatrix.

2.7    Recruitment.  Contractor shall recruit and provide initial screening of medical personnel on behalf of Pediatrix. Pediatrix retains responsibility for maintaining the qualifications and monitoring, of its medical personnel, and agrees that the role of Contractor is to present candidates for consideration.

2.8    Planning and Budgeting. Contractor shall assist Pediatrix in short and long range planning, including the projection of personnel needs, proposals of benefit packages, analyses of future markets, and other necessary planning services.  Contractor shall prepare annual budgets on behalf of Pediatrix, which shall be submitted to Pediatrix for its approval. Pediatrix agrees to present an annual budget to Contractor no later than 30 days prior to the commencement of each fiscal year ("Annual Budget") during the term of this Agreement. The Annual Budget must be acceptable to Contractor in its sole discretion. Pediatrix agrees to operate with and in accordance with the Annual Budget unless the variance from the Annual Budget is previously approved by Contractor or it involved an emergency expenditure to maintain required staffing levels or treatment standards and approval of Contractor could not be obtained in a timely basis for the emergency.

2.9    Insurance. Contractor shall evaluate, on an ongoing basis, the professional liability, general liability, and other insurance needs of Pediatrix and its employees, and make recommendations for same.  Contractor shall arrange and maintain in effect such policies of insurance as may be decided upon by Pediatrix.

2.10    Equipment and Supplies.  Contractor shall develop inventory systems to assure that reasonable inventories of equipment and supplies required by the employees of Pediatrix are available at all times.  Contractor shall purchase, pay for and arrange for the delivery of such equipment and supplies.

2.11    Additional Services.  Contractor shall provide such additional and further services as may be mutually agreed upon by Contractor and Pediatrix.

3.    Limitation on Services.  Contractor shall have no responsibility for the hiring, termination, training or supervision of physicians employed or otherwise retained by Pediatrix. Contractor shall exercise no control or have any responsibility for the professional services rendered by such physicians.  Any licenses, permits or other certifications which Pediatrix or its physician employee may need to provide professional services shall be the sole responsibility of Pediatrix and such physicians. The sole member agrees to perform all medical management deemed necessary or advisable by either Pediatrix or Contractor to satisfy good medical practice, hospital agreements and third party payor relationships.  Pediatrix agrees that any physician employed by it must be employed pursuant to an employment agreement having terms and conditions that are satisfactory to Contractor in its sole discretion. Pediatrix agrees that it will

3

Exhibit 1 - Page 27

insist on the performance by physician of his or her employment agreement in accordance with its terms and conditions. No amendments, or waivers or termination of employment agreements may be made by Pediatrix without the consent of Contractor.

4. **Hospital Negotiations.** Pediatrix hereby appoints Contractor as its sole and exclusive agent for the purpose of negotiating contracts with hospitals and medical centers wherein Pediatrix desires or proposes to provide neonatal and pediatric intensive care services. Pediatrix may not enter into any contract with a hospital unless such contract, and any amendment thereto, is satisfactory to Contractor in its sole discretion. Pediatrix agrees not to negotiate, make, propose, execute or allow any other party besides Contractor to provide such services during the term of this Agreement. The responsibility of Contractor does not include any duty to negotiate or obtain medical staff membership or clinical privileges for individual physicians. Pediatrix and the individual physicians shall be required to obtain necessary medical staff membership and clinical privileges as may be required to fulfill the contracts negotiated by Contractor. The parties stipulate that this exclusive agency Agreement is part of the inducement given Contractor to exert its efforts on behalf of Pediatrix. As further inducement to Contractor, Pediatrix agrees that neither Pediatrix, its members, employees or their heirs, assigns or successors in interest shall contract for the provision of medical services with any hospital or medical center which has been a party to a contract with Pediatrix if such contract was negotiated on behalf of Pediatrix by Contractor, for a period of eighteen (18) months following the termination of any such contract. The parties specifically agree that this provision shall survive the termination of this Agreement for any reason and that Pediatrix will cause each member, employee and independent contractor to execute such further documents or instruments as Contractor may request to evidence this Agreement. Furthermore, if Contractor terminates this Agreement, Pediatrix agrees to terminate its agreement with such hospitals and medical centers as soon as it may do so without breaching its then existing agreement with such parties.

5. **Books and Records.** Pediatrix shall have the right to inspect the books and records of Contractor regarding its collections, billing, accounting and other functions provided by Contractor on behalf of Pediatrix.

6. **Compensation and Expenses.**

6.1 **Compensation.** For all services rendered by Contractor in accordance with this Agreement, Pediatrix shall pay Contractor those sums described on Exhibit "A", which is attached to and made a part of this Agreement. Exhibit "A" may be amended from time to time by mutual agreement of the parties, and each such modification shall be signed by both parties and shall become an amendment to this Agreement.

6.2 **Expenses.** Out of the revenues of Pediatrix, Contractor shall pay all costs and expenses of Pediatrix.

7. **Term and Termination.**

7.1 **Term.** This Agreement shall have an initial term of 10 years, commencing on the 14th day of ____, 1995 (the "Effective Date"). On each anniversary of the

4

Exhibit 1 - Page 28

Effective Date the term of this Agreement shall automatically be increased by one year so that on each anniversary of the Effective Date the term of this Agreement will always be 10 years unless either party gives the other written notice of the termination of this Agreement within thirty (30) days of the next anniversary ("Termination Notice"). Upon receipt of a Termination Notice this agreement will terminate 10 years from the date of the next anniversary after receipt of the Termination Notice.

7.2. <u>Termination</u>. This Agreement may be terminated by either party upon a material breach of any provision of this Agreement by the other party which is not cured within sixty (60) days after written notice is given to the breaching party specifying the nature of the alleged breach.

8. <u>Status of Contractor</u>. In the performance of the duties, responsibilities and obligations required by this Agreement, Contractor shall at all times be performing as an independent contractor of Pediatrix. No act, work, commission or omission by Contractor pursuant to the terms and conditions of this Agreement shall be construed to make or render Contractor an agent, servant or employee of, or joint venturer with, Pediatrix. Nothing in this Agreement limits the right of Contractor to provide any services or products to enter into any contractual arrangements with any person or entity, including, without limitations, persons or entities in similar business or in competition with Pediatrix.

9. <u>Insurance</u>. Each party shall maintain such policies of general liability and professional liability insurance as are commercially available at limits of liability which are customarily maintained by similar enterprises. Pediatrix agrees to maintain such additional insurance policies and coverage that Contractor may request from time to time; provided, however, that Contractor shall not be liable under any circumstances if such coverage is deemed insufficient for any reason. Pediatrix shall advise Contractor in detail of any claims or possible claims on its insurance policies.

10. <u>Miscellaneous</u>.

10.1 <u>Notices</u>. Any notice required or permitted to be given hereunder to either party shall be deemed given if sent by hand delivery, by registered or certified mail, return receipt requested, or by overnight mail delivery for which evidence of delivery is obtained by the sender, to such party at:

| Pediatrix: | Pediatrix Medical Group of Texas, P.A. |
| | |
| | Attention: |
| | |
| Contractor: | Pediatrix Medical Group, Inc.<br>1455 Northpark Drive<br>Suite 200<br>Ft. Lauderdale, FL 33326<br>Attention: President |

5

Exhibit 1 - Page 29

10.2   Limitation of Assignment.  This Agreement shall not be assigned by Pediatrix without the prior express written consent of Contractor; provided, however, this Agreement may be assigned by Contractor.

10.3   Binding on Successors in Interest.  The provisions of, and obligations arising under, this Agreement shall extend to, be binding upon and inure to the benefit of the successors and assigns of each party.

10.4   Severability; Changes in Law.  If any part of this Agreement is determined to be invalid, illegal, inoperative, or contrary to law or professional ethics, the part shall be reformed, if possible, to conform to law and ethics; the remaining parts of this Agreement shall be fully effective and operative to the extent reasonably possible.  If any restriction contained in this Agreement is held by any court to be unenforceable or unreasonable, a lesser restriction shall be enforced in its place and the remaining restrictions shall be enforced independently of each other.

10.5   Conformance With Law.  Each party agrees to carry out all activities undertaken by it pursuant to this Agreement in conformance with all applicable federal, state, and local laws, rules, and regulations.

10.6   Time of the Essence.  Time shall be of the essence with respect to each and every term, covenant, and condition of this Agreement.

10.7   Attorney's Fees.  If either party incurs any suit costs and reasonable attorneys' fees with respect to the enforcement of this Agreement against the other, the successful party shall be entitled to recover from the other all suit costs and reasonable attorneys' fees, including fees on appeal, and each party shall pay those suit costs and reasonable attorneys' fees that may be incurred by the successful party in enforcing this Agreement.

10.8   Entire Agreement/Amendment.  This Agreement supersedes all previous contracts and constitutes the entire agreement between the parties.  Oral statements or prior written materials not specifically incorporated in this Agreement shall not be of any force and effect.  In entering into and executing this Agreement, the parties rely solely upon the representations and agreements contained in this Agreement and no others.  No changes in or additions to this Agreement shall be recognized unless and until made in writing and signed by an authorized officer or agent of Pediatrix and Contractor.

10.9   Governing Law.  This Agreement has been executed and delivered and shall be construed and enforced in accordance with the laws of the State of Florida.  Any action by any party whether at law or in equity, shall be commenced and maintained and venue be properly be in Broward or Dade County, Florida.

10.10  Third Party Beneficiaries.  This Agreement shall not be construed to create any third party beneficiaries.

6

Exhibit 1 - Page 30

10.11  Waiver of Breach.  No provision of this Agreement shall be deemed waived unless evidenced by a written document signed by an authorized officer or agent of Pediatrix and Contractor.  The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision of this Agreement.

10.12  Section and Other Headings.  The section and other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

10.13  Gender and Number.  When the context of this Agreement requires, the gender of all words shall include the masculine, feminine, and neuter, and the number of all words shall include the singular and plural.

10.14  Execution.  This Agreement and any amendments may be executed in multiple originals, each counterpart shall be deemed an original, but all counterparts together shall constitute one and the same instrument.

10.15  Additional Assurance.  The provisions of this Agreement are self-operative and do not require further agreement by the parties; provided, however, at the request of either party the other shall execute, except as otherwise provided in this Agreement, any additional instruments and take any additional acts the Contractor may deem reasonably necessary to effectuate this Agreement.

10.16  Force Majeure.  Neither party shall be liable nor deemed to be in default for any delay or failure in performance under this Agreement or other interruption of service or employment deemed resulting, directly or indirectly, from acts of God, civil or military authority, acts of public enemy, war, accidents, fires, explosions, earthquakes, floods, failure of transportation, strikes or other work interruptions by either party's employees, or any similar or dissimilar cause beyond the reasonable control of either party.

10.17  Authority.  Each signatory to this Agreement represents and warrants that he possesses all necessary capacity and authority to act for, sign, and bind the respective entity on whose behalf he is signing.

10.18  Acquisition Right.  The sole member of Pediatrix hereby irrevocably grants Contractor the fully assignable right, but not the obligation, to designate a qualified buyer to acquire all of the stock of Pediatrix for the cash sum of $▓▓▓▓ ("Acquisition Right") in each of the following instances:

(i)  if Pediatrix shall give a Termination Notice or if a termination occurs pursuant to Section 7.2, Contractor shall have the right to designate a qualified buyer to acquire the stock for a period of 90 days after the end of the term of this Agreement.

(ii)  if the sole member of Pediatrix receives a bona fide written offer from a third party that he or she wishes to accept, Contractor shall have 60 days from the date

7

Exhibit 1 - Page 31

of the actual receipt by Contractor of a copy of such bona fide offer to designate a qualified buyer to acquire the shares.

In order to protect the Acquisition Right, Pediatrix and the sole member agree as follows:

(i) Pediatrix will not merge or consolidate with another entity or sell any of its assets in other than the normal course of its business.

(ii) Pediatrix will not issue any stock, incur any debt, pledge or grant a security interest in an asset, amend the Articles of Association, By-Laws or any agreements of Pediatrix or declare any dividends.

(iii) Pediatrix will not enter into any material agreements with any person or entity without the prior written consent of Contractor.

10.18 Security. As security and collateral for the obligations of Pediatrix to Contractor, Pediatrix hereby grants a first security interest to Contractor in all tangible and intangible assets of Pediatrix, whether now owned or later acquired, and to all proceeds from such assets. Additionally, the sole member of Pediatrix agrees to pledge, as security for his or her obligations to Contractor and the obligations of Pediatrix to Contractor, all of the shares of Pediatrix owned by him or her and to place such shares in the possession of Contractor. Pediatrix and the member of Pediatrix agree to execute such further documents and instruments as may be deemed necessary or desirable by Contractor, in Contractor's sole discretion, to effect the provisions of this Section 10.18.

[remainder of intentionally left blank]

8

Exhibit 1 - Page 32

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers or agents.

PEDIATRIX:

PEDIATRIX MEDICAL GROUP OF TEXAS, P.A.,
a Texas professional association

By: _____

    Name: _____
    Title: _____

SOLE MEMBER OF PEDIATRIX:

_____

PEDIATRIX MEDICAL GROUP, INC.,
a Florida corporation

By: _____
    President

9

Exhibit 1 - Page 33

EXHIBIT "A"

## COMPENSATION

⬤ of all gross revenues of Pediatrix (without giving effect to any expenses) provided that this fee may not exceed the net profits of Pediatrix. For purposes of this Agreement, "net profits" shall mean all gross revenues of Pediatrix on a cash basis minus all the costs and expenses of Pediatrix also on a cash basis prior to giving effect to the fee payable to Contractor. Contractor shall have the right to determine the appropriate timing of revenues and costs and expenses as well as whether to determine this fee on a monthly, quarterly or annual basis.

Exhibit 1 - Page 34

0 0 1 9 3 3 0 2 3 5 9

ARTICLES OF INCORPORATION
OF

PEDIATRIX MEDICAL GROUP OF TEXAS, P.A.

FILED
in the Office of the
Secretary of State of Texas

APR 14 1995

CORPORATIONS SECTION

### ARTICLE ONE

The name of the corporation is PEDIATRIX MEDICAL GROUP OF TEXAS, P.A. (the "Association").

### ARTICLE TWO

The principal address of the Association is c/o: Pediatrix Medical Group, Houston N.W. Medical Center, 710 F.M. 1960, West at Caly, Houston, TX 77090 and the mailing address of the Association is c/o: Pediatrix Medical Group, 1455 Northpark Drive, Ft. Lauderdale, FL 33326

### ARTICLE THREE

The corporation is a professional association.

### ARTICLE FOUR

The period of duration is perpetual subject to §8(b), Article 1528(f), TEX. REV. CIV. STAT. ANN.

### ARTICLE FIVE

The purpose for which the Association is organized is to practice the profession of medicine, rendering that type of professional service and services ancillary thereto.

### ARTICLE SIX

The aggregate number of shares which the Association shall have authority to issue is One Thousand (1,000) shares of Common stock having a par value of $1.00 per share.

### ARTICLE SEVEN

The Association will not commence business until it has received for the issuance of shares consideration of the value of at least One Thousand Dollars ($1,000.00) consisting of money, labor done or property actually received.

5597404

Exhibit 1 - Page 35

0 0 1 9 9 3 0 2 8 5 0

## ARTICLE EIGHT

The street address of its initial registered office is 100 Congress Avenue, Suite 1100, Austin, Texas 78701, and the name of its initial registered agent at such address is Corporation Service Company d/b/a/ CSC-Lawyers Incorporating Service Company.

## ARTICLE NINE

The number of original members of the Association is one and the name and address of the original member is:

STEPHEN HASKINS, M.D.
10609 Indian Trail
Cooper City, Florida 33328
Texas License #G6074

## ARTICLE TEN

The original member of the Association is duly licensed to practice medicine in the State of Texas and to perform the type of professional service for which the Association is formed.

## ARTICLE ELEVEN

No member of the Association shall have the power to dissolve the Association by a single member's independent act of any kind.

## ARTICLE TWELVE

The number of directors constituting the initial board of directors is one, and the name and address of the person who will serve as the initial director of the Association until the first annual meeting of the shareholders or until a successor is duly elected and qualified is

STEPHEN HASKINS, M.D.
10609 Indian Trail
Cooper City, Florida 33328

## ARTICLE THIRTEEN

The name of the incorporator is Stephen Haskins, M.D., the original member of the Association, and the address of said incorporator is 10609 Indian Trail, Cooper City, Florida 33328.

2

Exhibit 1 - Page 36

0 0 1 9 8 3 9 2 4 6 1

IN WITNESS WHEREOF, the undersigned, being the incorporator named above for the purpose of forming a professional association pursuant to Texas Revised Civil Statutes Annotated, Article 1528(f) of the Professional Association Act of the State of Texas has signed these Articles of Incorporation this _____ day of April, 1995.

STEPHEN HASKINS, M.D., Incorporator

3.

Exhibit 1 - Page 37

EX-10.31

Exhibit 10.31

## EXCLUSIVE MANAGEMENT

## AND ADMINISTRATIVE SERVICES AGREEMENT

**THIS EXCLUSIVE MANAGEMENT AND ADMINISTRATIVE SERVICES AGREEMENT** (the *"Agreement"*) effective _____, is by and between _____ (*"Manager"*) and _____, a _____ professional [corporation, association] (*"Practice"*).

**WHEREAS,** Practice is a professional [corporation, association] which employs physicians and other clinical professionals qualified to provide services in neonatology, maternal-fetal medicine, and other pediatric subspecialties and/or certain other professional services to patients (*"Professional Medical Services"*); and

**WHEREAS,** Manager is a corporation engaged in the business of providing administrative and management services (collectively, *"Management Services"*) to medical practices; and

**NOW, THEREFORE**, in consideration of the mutual promises and other valuable consideration, the sufficiency of which is hereby acknowledged, the parties intending to be legally bound by this Agreement agree as follows:

### ARTICLE 1.

### ENGAGEMENT

Practice hereby engages Manager, and Manager hereby agrees to be engaged by Practice, to provide or arrange for the provision of the management and administrative services described in this Agreement, so as to support the provision of Professional Medical Services by Practice to hospitals, other healthcare facilities, and their patients, through the physicians and other clinical employees or independent contractors of Practice (the *"Professionals"*).

### ARTICLE 2.

### DUTIES OF MANAGER

Manager shall provide or arrange to provide certain Management Services required for the day-to-day operations of Practice and shall have authority over all decision-making relating to the provision of such services. Manager does not have any decision-making authority over the provision of Professional Medical Services, which shall be the exclusive responsibility of the Professionals. Management Services include but are not limited to the following:

Exhibit 2 - Page 38

2.1 <u>Coding</u>. Manager will provide resources to Practice to assist with the process of assigning CPT and ICD-9 codes, as appropriate to the Professional Medical Services provided by the Professionals. Such services may include implementation of coding guidelines, computerized billing programs and individual coding review. The Practice acknowledges that, although

-1-

Manager will provide resources to assist the coding process, final coding decisions shall be the responsibility of the Professionals.

2.2 <u>Billing and Collection Services</u>. Manager shall provide billing and collection services for all Professional Medical Services rendered by Practice and its Professionals. Such services shall include: the correlation of records kept by the Professionals who render care; maintenance of insurance information for each patient; computation and submission of bills for each patient account; pursuit of any disputed claims, including the filing of lawsuits to obtain payment; and accounting for the collection of all revenues. To facilitate the expeditious collection of all of Practice's fees for services provided by its Professionals, and to assist Manager in providing appropriate cash flow management to Practice, Practice hereby assigns to Manager all of its professional fees and accounts receivable for services provided, once collected by Practice, excluding fees and accounts receivable relating to professional services rendered to patients eligible for coverage under the Medicare or Medicaid programs or other third party payors which prohibit such assignments, and hereby appoints Manager as its true and lawful attorney-in-fact, with full power to collect and otherwise deal in and with such fees and receivables assigned by Practice; *provided, however*, that, to the extent allowed by law, Practice assigns to Manager all income received by it on account of services rendered to patients of Practice who are eligible for coverage in the Medicare or Medicaid programs and other third party payors which prohibit assignments, and Practice agrees to surrender, transfer, and remit to Manager promptly all fees received on behalf of or from such patients. Practice agrees to execute any and all instruments and documents deemed necessary or desirable by Manager to carry out the provisions of this section. Practice agrees that, to the extent Manager receives notice from a hospital or other healthcare entity of, or Manager makes on its own behalf, a bona fide request to write-off or hold in abeyance any of Practice's professional fees, that Practice will not unreasonably refuse the request of the hospital or other healthcare entity or Manager.

2.3 <u>Third Party Payors</u>. Manager shall act as the liaison of Practice with all third party payors for the purpose of negotiating managed care, preferred provider and other agreements with such third party payors. Manager shall monitor performance of the respective parties to such agreements for compliance with the terms and conditions set forth therein, as well as all applicable federal and state laws, rules and regulations.

Exhibit 2 - Page 39

2.4 Hospital Liaison. Manager shall be the administrative liaison between Practice and any hospital or other healthcare entity in which Practice and/or Professionals provide Professional Medical Services, including pursuant to a contractual arrangement between Practice and the hospital or other healthcare entity. Manager shall provide to Practice all administrative services associated with Practice's Professional Medical Services at such hospitals. Manager shall also bill and collect all medical director stipends, coverage fees or other sums that may be due from such hospitals or other healthcare entity.

2.5 Human Resources Services. Manager shall provide the following human resources services: maintenance of employment records on each employee; establishment and administration of employee benefits, including insurance plans; recruiting and hiring of any personnel other than the Professionals (the *"Non-Clinical Personnel"*); evaluation and salary

-2-

recommendations for Non-Clinical Personnel; provision of day-to-day management and direction to Non-Clinical Personnel; and development of human resource policies and procedures pertaining to Non-Clinical Personnel. Manager shall establish payroll accounts and procedures in accordance with Section 2.7.

2.6 Financial Services. Manager shall provide the following financial services: Manager shall provide such bookkeeping services as may be required to keep the books and accounts of Practice, and may, at its discretion, retain a professional accountant to perform same; Manager shall manage, federal, state and local tax compliance and liabilities; and Manager shall track and pay all accounts on behalf of the Practice.

Manager and Practice shall work together to develop a fee schedule for Professional Medical Services to be provided by Practice; *provided, however,* that such fee schedule shall be subject to the final approval of Manager. Manager shall review the fee schedule on a periodic basis and recommend changes to Practice as may be necessary.

2.7 Cash Management. Manager is authorized to open one or more bank accounts necessary to manage the finances of Practice. Manager is authorized to establish payroll systems and make payroll payments, pay accounts payable and otherwise satisfy the obligations of Practice from these accounts. Manager shall deposit all collections from services rendered by Practice into these accounts. Manager shall prepare monthly reconciliations of all bank accounts.

2.8 Recruiting. Manager shall recruit Professionals on behalf of Practice. Practice retains responsibility for monitoring and maintaining the qualifications of its Professionals. The parties agree that the role of Manager is to present candidates for consideration by Practice, and that

Exhibit 2 - Page 40

Practice shall have ultimate responsibility for the hiring and termination of Professionals. The contract between Practice and a hospital or other healthcare entity shall govern the types of specialties of the Professionals needed for the Practice.

2.9 Credentialing. Manager shall monitor the licensing and credentials of the Professionals to ensure that the Professionals continue to meet credentialing guidelines set forth by the state, hospital and Practice in which the Professional provides Professional Medical Services, as well as the third party payors contracted with Practice. Professionals shall remain responsible for the maintenance of their licenses and credentials.

2.10 Planning and Budgeting. Manager shall assist Practice in short and long range planning, including the projection of personnel needs, proposals of benefit packages, analyses of future markets, and other necessary planning services. Practice shall prepare annual budgets ("Annual Budget"), which shall be submitted to Manager for its approval. Such Annual Budget must be acceptable to Manager so that Manager can ensure that it can fulfill its obligations under this Agreement. Practice agrees to operate within and in accordance with the Annual Budget unless a variance from the Annual Budget has been previously approved by Manager or such variance involves an emergency expenditure to maintain required staffing levels or treatment standards and approval of Manager could not be obtained in a timely manner due to such emergency. Notwithstanding the foregoing, Practice retains the responsibility for ensuring that

-3-

adequate staffing levels are maintained, and must notify Manager if Practice is not adequately staffed at any point.

2.11 Insurance. Manager shall obtain and maintain, on behalf of Practice, such policies of general liability, professional liability and other appropriate insurance as are commercially available at limits of liability which are customarily maintained by similar enterprises. In the alternative, at the request of Manager, Practice shall maintain such policies with coverage and limits acceptable to Manager in its sole discretion. In no event shall Manager be liable under any circumstances if such coverage is deemed insufficient for any reason and Practice shall immediately notify Manager if any third party deems such coverage to be insufficient. Practice shall advise Manager in detail of any claims or possible claims against such insurance policies.

2.12 Compliance. Manager shall maintain, on behalf of itself and Practice, a Compliance Program, which supports the intent of the parties to comply with all applicable legal and regulatory requirements that affect healthcare providers. The Compliance Program will be operated in accordance with (1) a written Compliance Plan and Code of Conduct; (2) those compliance policies and procedures established by Manager to support the requirements and

Exhibit 2 - Page 41

spirit of the Compliance Program; and (3) generally recognized and accepted healthcare industry compliance practices, established statutory and regulatory requirements, and sound business, legal and ethical principles.

2.13 Legal. Manager shall arrange for legal resources to facilitate hospital, health care entity and clinical employment contracting, real estate and other contract review, maintenance of corporate records and minute books, and general legal compliance.

2.14 Risk Management. Manager shall develop programs to identify areas of potential legal risk for the Practice and provide and coordinate risk management services and legal representation in the event of actual or anticipated litigation against Practice.

2.15 Research Support. Manager shall make available to Practice various resources and opportunities to enable Practice to participate in clinical research projects. Specifically, Practice authorizes Manager to negotiate the terms and conditions of research agreements between Practice and third parties; provided, however, that Practice will be a party to such research agreements and responsible for conducting the research in accordance with the terms of the executed agreements. Manager shall have no direct or indirect responsibility thereunder. In addition, Manager will develop and implement on behalf of Practice guidelines relating to research, assist Practice in developing opportunities to participate in research, generate funding for such participation, and coordinate the billing and management of research revenue, as well as other financial aspects of Practice's involvement in research. Practice delegates and conveys upon Manager the right and responsibility to: (1) negotiate budgets and payments under any research agreement to which Practice is a party; and (2) handle the billing for and collection of such payments. Practice shall notify Manager about any changes in a protocol or developments during a clinical study which might impact a study budget and/or trigger a breach, termination or renegotiation of an agreement. Practice shall cooperate with Manager in the negotiation of the

-4-

terms of research agreements, including development of fair market value rates for use in research budgets.

2.16 Education Support. Manager shall provide educational resources to Professionals, including resources to support continuing medical education and continuing nursing education requirements of the Professionals pursuant to state licensure laws.

2.17 Peer Review. Consistent with the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101, Manager shall develop and maintain, on Practice's behalf, programs to improve the

Exhibit 2 - Page 42

quality of care provided by Professionals. Upon a request for peer review from management or a Professional, Manager shall arrange for a review by a qualified professional or professionals in the same or similar specialty as the Professional under review. Manager shall provide assistance to Practice in implementing recommendations or a corrective action plan, follow-up issues and fulfilling reporting obligations, if any.

2.18 Quality Improvement. Manager shall develop programs designed to improve the quality of care provided by the Professionals and encourage identification and adoption of clinical best practices. Practice and Manager acknowledge that, in connection with such quality improvement activities, it may be necessary to provide Manager with PHI and Practice and Manager agree to treat such information in accordance with section 2.20 hereof.

2.19 Additional Services. Although the parties have endeavored to reflect the management and administrative services that Manager shall provide hereunder, they expressly recognize that there may be additional services provided by Manager, it being the intent of the parties that all management and administrative services necessary for the operations of Practice be provided by Manager. Additional services also may be suggested by Practice and provided by Manager upon mutual agreement of the parties. In the event that Manager cannot perform any additional services that Practice may request, Manager shall arrange for the provision of such additional services.

2.20 HIPAA and Business Associate Status. Practice and Manager acknowledge that, in connection with the provision of Management Services under this Agreement, it may be necessary for Practice to provide Manager with Protected Health Information ("PHI") (as defined in Exhibit B), and therefore, the Practice and Manager agree to enter into the Business Associate Agreement set forth in Exhibit B attached hereto and made a part hereof.

### ARTICLE 3.

### HOSPITAL CONTRACTS

3.1 Performance of Services. Practice may directly contract with hospitals and other healthcare entities for the provision of Professional Medical Services pursuant to Section 3.2 below. Practice hereby agrees to provide Professional Medical Services solely and exclusively to hospitals and other healthcare entities with which Manager has approved of the contract for the

-5-

Exhibit 2 - Page 43

provision of such services by Practice. Such approval by Manager is intended to ensure that contracts contain appropriate financial terms and restrictive covenants, in keeping with the intent of this Agreement, so as to enable Manager to fulfill its obligations under this Agreement. Practice shall comply and require its Professionals to comply with the terms and conditions of this Section and such hospital and other healthcare entity contracts.

3.2 Negotiation of Contracts. Practice agrees not to negotiate, make, propose or execute any contract, nor allow any other party besides Manager to arrange for the Professional Medical Services of Practice or its Professionals during the term of this Agreement; *provided, however,* that Practice will execute agreements with hospitals that have been approved by Manager in accordance with Section 3.1 herein.

3.3 Privileges. The responsibilities of Manager hereunder do not include any duty to negotiate or obtain medical staff membership or clinical privileges for Professionals. At Manager's request, such Professionals shall be required to (i) obtain necessary medical staff membership and clinical privileges; and (ii) to resign from medical staff membership and clinical privileges upon termination for any reason from Practice, upon termination of this Agreement, or as may be required to fulfill the contracts with hospitals and other healthcare entities.

3.4 Non-Competition. Practice agrees that neither Practice, nor its shareholders or Professionals, nor their heirs, assigns or successors in interest, shall contract with or arrange for the provision of Professional Medical Services at any hospital or other healthcare entity which has been a party to a contract with Manager or Practice for a period of eighteen (18) months following the termination of any such contract. Practice further agrees that, upon termination of this Agreement for any reason, it will not contract with or arrange for the provision of Professional Medical Services at any hospital or other healthcare entity at which Practice has provided services during the term hereof for a period of two (2) years following the termination of this Agreement. The parties specifically agree that this provision shall survive the termination of this Agreement for any reason and that Practice shall cause each shareholder and Professional to execute such further documents or instruments as Manager may request to evidence Section 3.3 of this Agreement.

3.5 Confidential Information. Practice agrees that neither Practice, nor its shareholders or Professionals, shall reveal to any person, association, or company, or shall use or otherwise exploit for their own benefit or for the benefit of anyone other than Manager, any Confidential Information (as defined below) concerning the organization, business or finances of Manager so far as they have come or may come to their knowledge, except as may be required in the ordinary course of performing their duties for the medical practice of Practice or except as may be in the public domain through no fault of their own, and they shall keep secret all matters entrusted to them and shall not use or attempt to use any such Confidential Information in any manner which may injure or cause loss or may be calculated to injure or cause loss whether directly or indirectly to Manager. *"Confidential Information"* shall include, without limitation, any patents, patent applications, licenses, copyrights, trademarks, trade names, service marks, service names, *"know-how,"* trade secrets, customer or patient lists, details of client or

Exhibit 2 - Page 44

consulting contracts, pricing policies, operational methods, marketing plans or strategies, product

-6-

development techniques or plans, procurement and sales activities, promotional and pricing techniques, credit and financial data concerning customers, business acquisition plans or any portion or phase of any scientific or technical information, ideas, discoveries, designs, computer programs (including source or object codes), processes, procedures, formulas or improvements of Practice, whether or not in written or tangible form, and whether or not registered, and including all memoranda, notes, plans, reports, records, documents and other evidence thereof.

Practice, its shareholders and Professionals agree to promptly return to Manager any Confidential Information in their possession upon disassociation or termination for any reason from Practice or upon the termination of this Agreement for any reason.

The parties specifically agree that the provisions of this Section 3.5 shall survive termination of this Agreement for any reason and that Practice shall cause each shareholder and Professional to execute such further documents or instruments as Manager may request to evidence Section 3.5 of this Agreement.

3.6 Breach of Covenants. The parties hereto agree that damage to Manager would be irreparable and incalculable should Practice or its shareholders, Professionals or other employees, affiliates or agents violate the covenants contained in Section 3 of this Agreement. Without limitation of any other legal or equitable rights which Manager may possess, Practice expressly agrees that Manager or its assigns shall be entitled to injunctive relief without the necessity of first proving damages in the event of a threatened or actual breach of such covenants by Practice, its shareholders, Professionals or other employees, affiliates or agents. Said right to temporary or injunctive relief shall exist notwithstanding any dispute, controversy or allegation of breach by Practice hereunder or otherwise. Practice shall cause its shareholders, Professionals and other employees, affiliates or agents to execute appropriate documents as necessary to effectuate this provision.

### ARTICLE 4.

### LIMITATION ON MANAGEMENT SERVICES

Notwithstanding any other provision to the contrary contained in this Agreement, Manager shall exercise no control nor have any responsibility for the Professional Medical Services

Exhibit 2 - Page 45

rendered to any patient by the Professionals. Manager and Practice agree that it is not the intent of this Agreement to interfere with the professional clinical judgment of the Professionals. Manager shall not, in any manner, directly or indirectly regulate or control the Professional's independent clinical judgment concerning the practice of medicine or the diagnosis and treatment of patients. All decisions relating to patient care and treatment shall be made by a licensed physician or other clinical provider in his or her sole and absolute discretion. Any licenses, permits or other certifications which Practice or its Professionals may need to provide Professional Medical Services shall be the sole responsibility of Practice and such Professionals. The shareholder(s) of Practice agree to perform all medical management deemed necessary or advisable by either Practice or Manager to satisfy hospital agreements, third party payor relationships, and good medical practice organization and management.

-7-

Practice shall retain responsibility for the hiring, termination, training or supervision of Professionals employed or otherwise retained by Practice. Any Professional employed or otherwise retained by Practice shall be retained pursuant to an agreement which contains terms and conditions concerning Practice's finances and restrictive covenants that are satisfactory to Manager and in keeping with the intent of this Agreement, so as to enable Manager to fulfill its obligations under this Agreement. Practice agrees to ensure that Professionals perform the obligations of their respective agreements (including employment agreements) in accordance with the terms and conditions of such agreements and this Agreement, as the case may be. Manager shall have final approval of any amendments, waivers or termination of employment agreements made by Practice which affect Practice's finances or restrictive covenants.

### ARTICLE 5.

### BOOKS AND RECORDS

Practice shall have the right to inspect the books and records of Manager regarding its collections, billing, accounting and other functions provided by Manager on behalf of Practice.

### ARTICLE 6.

### COMPENSATION AND EXPENSES

6.1 Compensation. For all services rendered by Manager in accordance with this Agreement, Practice shall pay Manager those sums described in *"Exhibit A,"* which is attached to and made

Exhibit 2 - Page 46

a part of this Agreement. *"Exhibit A"* may be amended from time to time by Manager to reflect industry standards and the range of services provided by Manager.

6.2 <u>Expenses</u>. Manager shall pay all costs and expenses of Practice out of the revenues of Practice.

## ARTICLE 7.

## TERM AND TERMINATION

7.1 The parties intend that the term of the arrangements under this Agreement shall be permanent, subject only to the rights of termination pursuant to Sections 7.2, 7.3 and 7.4 hereof.

7.2 <u>Termination by Manager with Cause</u>. This Agreement may be terminated by Manager upon a material breach of any provision of this Agreement by Practice which is not cured within thirty (30) days after written notice is given to Practice specifying the nature of the alleged breach.

7.3 <u>Termination by Manager without Cause</u>. This Agreement may be terminated by Manager without cause upon sixty (60) days written notice to Practice.

-8-

7.4 <u>Termination by Practice with Cause</u>. This Agreement may be terminated by Practice only in the event of gross negligence, fraud or other illegal acts of Manager; *provided,* that such events must first have been proven in a court of competent jurisdiction and all appeal rights related thereto have been exhausted prior to any termination pursuant to this Section 7.4. Except as provided in this Section 7.4, under no circumstances shall Practice have the right to terminate this Agreement.

## ARTICLE 8.

## STATUS OF MANAGER

In the performance of the duties, responsibilities and obligations required by this Agreement, Manager shall at all times be performing as an independent contractor of Practice. No act, work, commission or omission by Manager pursuant to the terms and conditions of this Agreement shall be construed to make or render Manager an agent, servant or employee of, or joint venturer with, Practice. Nothing in this Agreement limits the right of Manager to provide any services or products or enter into any contractual arrangements with any person or entity,

Exhibit 2 - Page 47

including, without limitation, persons or entities in similar businesses or in competition with Practice.

## ARTICLE 9.

## MISCELLANEOUS

9.1 Notices. Any notice required or permitted to be given hereunder to either party shall be deemed given if sent by hand delivery, by registered or certified mail, return receipt requested, or by overnight mail delivery for which evidence of delivery is obtained by the sender, to such party at:

Practice:

[ADDRESS]

Manager:

[ADDRESS]

9.2 Limitation of Assignment. This Agreement shall not be assigned by Practice without the prior express written consent of Manager. This Agreement may be assigned by Manager unilaterally and without consent of the Practice.

-9-

9.3 Binding on Successors in Interest. The provisions of, and obligations arising under, this Agreement shall extend to, be binding upon and inure to the benefit of the successors and assigns of each party.

9.4 Severability; Changes in Law. If any part of this Agreement is determined to be invalid, illegal, inoperative, or contrary to law or professional ethics, that part shall be reformed, if possible, to conform to law and ethics; the remaining parts of this Agreement shall be fully effective and operative to the extent reasonably possible. If any restriction contained in this Agreement is held by any court to be unenforceable or unreasonable, a lesser restriction shall be enforced in its place and the remaining restrictions shall be enforced independently of each other.

9.5 Conformance with Law. Each party agrees to carry out all activities undertaken by it pursuant to this Agreement in conformance with all applicable federal, state and local laws, rules and regulations.

Exhibit 2 - Page 48

9.6 <u>Time of the Essence</u>. Time shall be of the essence with respect to each and every term, covenant and condition of this Agreement.

9.7 <u>Entire Agreement/Amendment</u>. This Agreement supersedes all previous <u>contracts</u> between the parties relating to the subject matter hereof, and, together with the Joinder and any Exhibits expressly incorporated herein, constitutes the entire agreement between the parties. Oral statements or prior written materials not specifically incorporated in this Agreement shall not be of any force and effect. In entering into and executing this Agreement, the parties rely solely upon the representations and agreements contained in the Agreement and no others. Except as provided in Section 6.1, no changes in or additions to this Agreement shall be recognized unless and until made in writing and signed by an authorized officer or agent of Practice and Manager.

9.8 <u>Governing Law</u>. This Agreement has been executed and delivered and shall be construed and enforced in accordance with the laws of the State of Florida. Any action by any party whether at law or in equity, shall be commenced and maintained and venue shall properly be in Broward County, Florida.

9.9 <u>Third Party Beneficiaries</u>. This Agreement shall not be construed to create any third party beneficiaries.

9.10 <u>Waiver of Breach</u>. No provision of this Agreement shall be deemed waived unless evidenced by a written document signed by an authorized officer or agent of Practice and Manager. The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision of this Agreement.

9.11 <u>Section and Other Headings</u>. The section and other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

-10-

9.12 <u>Gender and Number</u>. When the context of this Agreement requires, the gender of all words shall include the masculine, feminine and neuter, and the number of all words shall include the singular and plural.

9.13 <u>Execution</u>. This Agreement and any amendments may be executed in multiple originals, each counterpart shall be deemed an original, but all counterparts together shall constitute one and the same instrument.

Exhibit 2 - Page 49

9.14 <u>Additional Assurances</u>. The provisions of this Agreement are self-operative and do not require further agreement by the parties; *provided, however,* at the request of either party the other shall execute any additional instruments and take any additional acts that Manager may deem reasonably necessary to effectuate this Agreement.

9.15 <u>Force Majeure</u>. Neither party shall be liable nor deemed to be in default for any delay or failure in performance under this Agreement or other interruption of service or employment deemed resulting, directly or indirectly, from acts of God, civil or military authority, acts of public enemy, war, accidents, fires, explosions, earthquakes, floods, failure of transportation, strikes or other work interruptions by either party's employees, or any similar or dissimilar cause beyond the reasonable control of either party.

9.16 <u>Authority</u>. Each signatory to this Agreement represents and warrants that he/she possesses all necessary capacity and authority to act for, sign, and bind the respective entity on whose behalf he/she is signing.

9.17 <u>Security</u>. As security and collateral for (i) the obligations of Practice to Manager under this Agreement, and (ii) any loans from Manager to Practice (whether made before or after the date hereof), Practice hereby grants a first security interest to Manager in all tangible and intangible assets of Practice, whether now owned or later acquired, and to all proceeds from such assets. Additionally, the shareholder(s) of Practice pledges, as security for his, her, or their obligation to Manager and the obligations of Practice to Manager, all of the shares of Practice owned by him, her, or them and shall place such shares in the possession of Manager. Practice and the shareholder(s) of Practice agree to execute such further documents and instruments as may be deemed necessary or desirable by Manager, in Manager's sole discretion, to effect the provisions of this Section.

9.18 <u>No Duty to Patients</u>. Nothing in this Agreement is intended by the parties to create or imply a duty by Manager to Practice's patients or patients of the hospitals or other healthcare facilities in which the Professionals provide services.

9.19 <u>No Duty to Patients Undertaken</u>. Nothing in this Agreement is intended by the parties to be an assumption by Manager of a duty to Practice's patients or patients of the hospitals or other healthcare facilities in which the Professionals provide services.

-11-

9.20 <u>No Limitation on Professional Medical Services</u>. Nothing in this Agreement is intended by the parties to limit or control in any way, services provided by the Practice's Professionals.

Exhibit 2 - Page 50

*(THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK)*

-12-

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed by their duly authorized officers or agents.

*"Practice"*                                                   *"Manager"*

By                                                                   By
Name:                                                            Name:
Title:                                                               Title:

-13-

Filing Submission  —  Alternative Formats (Word / Rich Text, HTML, Plain Text, SGML, XML, et al.)

Exhibit 2 - Page 51

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Beverly Reid O'Connell and the assigned discovery Magistrate Judge is Paul Abrams.

The case number on all documents filed with the Court should read as follows:

## CV13- 5489 BRO (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

UNITED STATES OF AMERICA, ex rel. MARK T. KAWA

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

MEDNAX, INC. a Florida corporation; , et al.

**(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)**
Victor M. Bartholetti (SBN 138480), LAW OFFICES OF VICTOR M. BARTHOLETTI, 15260 Ventura Blvd., SUITE 1400, Sherman Oaks, CA 91403
818-817-9535

**(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)**

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

---

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of False Claims Act

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☒ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influ-enced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Com-modities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY: Case Number:** CV13-05489

**AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ NO ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ NO ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☒ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |
| | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| See additional sheet attached. | See additional sheet attached. |
| | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| See additional sheet attached. | See additional sheet attached. |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note:** In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____ DATE: July 29, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

Attachment to Civil Cover Sheet – Section  IX. VENUE

Subsection (b)

| Named Defendant | County |
| --- | --- |
| MEDNAX, INC. | Florida |
| MEDNAX SERVICES, INC. | Florida |
| PEDIATRIX MEDICAL GROUP, INC. | Florida |
| AMERICAN ANESTHESIOLOGY, INC. | Florida |
| PEDIATRIX MEDICAL GROUP OF CALIFORNIA, A.P.C. | Los Angeles County; Central District of CA |
| PEDIATRIX CARDIOLOGY OF ORANGE COUNTY, P.C. | Orange County; Central District of CA |
| PEDIATRIX CARDIOLOGY OF SACRAMENTO, P.C. | Sacramento County, CA |
| OBSTETRIX MEDICAL GROUP OF CALIFORNIA, A.P.C. | Los Angeles County; Central District of CA |
| OBSTETRIX MEDICAL GROUP OF SACRAMENTO, P.C. | Sacramento County, CA |
| OBSTETRIX MEDICAL GROUP OF THE CENTRAL COAST, P.C. | San Luis Obispo County; Central District of CA |
| OBSTETRIX MEDICAL GROUP OF ARIZONA, P.C. | Arizona, CA |
| OBSTETRIX MEDICAL GROUP OF PHOENIX, P.C. | Arizona, CA |
| PEDIATRIX MEDICAL GROUP OF COLORADO, P.C. | Colorado |
| OBSTETRIX MEDICAL GROUP OF COLORADO, P.C. | Colorado |
| PEDIATRIX MEDICAL GROUP OF GEORGIA, P.C. | Georgia |
| PEDIATRIX MEDICAL GROUP OF TENNESSEE, P.C. | Georgia |
| OBSTETRIX MEDICAL GROUP OF ATLANTA, LLC. | Georgia |
| NORTHSIDE WOMEN'S SPECIALISTS, INC. | Georgia |
| AMERICAN ANESTHESIOLOGY ASSOCIATES OF GEORGIA, LLC | Georgia |
| AMERICAN ANESTHESIOLOGY OF VIRGINIA, P.C. | Virginia |
| PEDIATRIX OF MARYLAND, P.A. | Maryland |
| PEDIATRIX MEDICAL GROUP OF THE MID-ATLANTIC, P.C., doing business as MARYLAND PERINATAL ASSOCIATES | Maryland |
| NEONATOLOGY ASSOCIATES, P.C. | Maryland |
| AMERICAN ANESTHESIOLOGY OF MICHIGAN, P.C. | Michigan |
| PEDIATRIX MEDICAL GROUP OF MICHIGAN, P.C. | Michigan |
| PEDIATRIX MEDICAL GROUP, P.A. | New Jersey |
| AMERICAN ANESTHESIOLOGY ASSOCIATES, P.A. | New Jersey |
| BURLINGTON ANESTHESIA ASSOCIATES, P.A. | New Jersey |
| PEDIATRIX MEDICAL GROUP OF NORTH CAROLINA, P.C. | North Carolina |
| OBSTETRIX MEDICAL GROUP OF COASTAL CAROLINA, PLLC | North Carolina |

| | |
|---|---|
| AMERICAN ANESTHESIOLOGY OF NORTH CAROLINA, PLLC | North Carolina |
| AMERICAN ANESTHESIOLOGY OF THE SOUTHEAST, PLLC | North Carolina |
| SOUTHEAST ANESTHESIOLOGY CONSULTANTS, PLLC | North Carolina |
| PEDIATRIX MEDICAL SERVICES, INC. | Texas |
| AMERICAN ANESTHESIOLOGY OF TEXAS, INC. | Texas |
| PEDIATRIX MEDICAL GROUP OF WASHINGTON, INC., P.S. | Washington |
| PEDIATRIX CARDIOLOGY OF WASHINGTON, P.C. | Washington |
| OBSTETRIX MEDICAL GROUP OF WASHINGTON, INC., P.S. | Washington |

Subsection (c)

| Named Defendant | County |
|---|---|
| MEDNAX, INC. | Florida |
| MEDNAX SERVICES, INC. | Florida |
| PEDIATRIX MEDICAL GROUP, INC. | Florida |
| AMERICAN ANESTHESIOLOGY, INC. | Florida |
| PEDIATRIX MEDICAL GROUP OF CALIFORNIA, A.P.C. | Los Angeles County; Central District of CA |
| PEDIATRIX CARDIOLOGY OF ORANGE COUNTY, P.C. | Orange County; Central District of CA |
| PEDIATRIX CARDIOLOGY OF SACRAMENTO, P.C. | Sacramento County, CA |
| OBSTETRIX MEDICAL GROUP OF CALIFORNIA, A.P.C. | Los Angeles County; Central District of CA |
| OBSTETRIX MEDICAL GROUP OF SACRAMENTO, P.C. | Sacramento County, CA |
| OBSTETRIX MEDICAL GROUP OF THE CENTRAL COAST, P.C. | San Luis Obispo County; Central District of CA |
| OBSTETRIX MEDICAL GROUP OF ARIZONA, P.C. | Arizona, CA |
| OBSTETRIX MEDICAL GROUP OF PHOENIX, P.C. | Arizona, CA |
| PEDIATRIX MEDICAL GROUP OF COLORADO, P.C. | Colorado |
| OBSTETRIX MEDICAL GROUP OF COLORADO, P.C. | Colorado |
| PEDIATRIX MEDICAL GROUP OF GEORGIA, P.C. | Georgia |
| PEDIATRIX MEDICAL GROUP OF TENNESSEE, P.C. | Georgia |
| OBSTETRIX MEDICAL GROUP OF ATLANTA, LLC. | Georgia |
| NORTHSIDE WOMEN'S SPECIALISTS, INC. | Georgia |
| AMERICAN ANESTHESIOLOGY ASSOCIATES OF GEORGIA, LLC | Georgia |
| AMERICAN ANESTHESIOLOGY OF VIRGINIA, P.C. | Virginia |
| PEDIATRIX OF MARYLAND, P.A. | Maryland |
| PEDIATRIX MEDICAL GROUP OF THE MID-ATLANTIC, P.C., doing business as MARYLAND PERINATAL ASSOCIATES | Maryland |

| | |
|---|---|
| NEONATOLOGY ASSOCIATES, P.C. | Maryland |
| AMERICAN ANESTHESIOLOGY OF MICHIGAN, P.C. | Michigan |
| PEDIATRIX MEDICAL GROUP OF MICHIGAN, P.C. | Michigan |
| PEDIATRIX MEDICAL GROUP, P.A. | New Jersey |
| AMERICAN ANESTHESIOLOGY ASSOCIATES, P.A. | New Jersey |
| BURLINGTON ANESTHESIA ASSOCIATES, P.A. | New Jersey |
| PEDIATRIX MEDICAL GROUP OF NORTH CAROLINA, P.C. | North Carolina |
| OBSTETRIX MEDICAL GROUP OF COASTAL CAROLINA, PLLC | North Carolina |
| AMERICAN ANESTHESIOLOGY OF NORTH CAROLINA, PLLC | North Carolina |
| AMERICAN ANESTHESIOLOGY OF THE SOUTHEAST, PLLC | North Carolina |
| SOUTHEAST ANESTHESIOLOGY CONSULTANTS, PLLC | North Carolina |
| PEDIATRIX MEDICAL SERVICES, INC. | Texas |
| AMERICAN ANESTHESIOLOGY OF TEXAS, INC. | Texas |
| PEDIATRIX MEDICAL GROUP OF WASHINGTON, INC., P.S. | Washington |
| PEDIATRIX CARDIOLOGY OF WASHINGTON, P.C. | Washington |
| OBSTETRIX MEDICAL GROUP OF WASHINGTON, INC., P.S. | Washington |